IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHRIS L. LOFTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-17-242 |
| | ) | |
| FTS INTERNATIONAL MANUFACTURING, LLC, | ) ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

Two motions sit before the Court. In one, Defendant asks the Court to dismiss Plaintiff's claims on timeliness grounds. Doc. 20. In the other, Plaintiff moves to strike several of Defendant's affirmative defenses. Doc. 23. Upon review, the Court will GRANT IN PART and DENY IN PART the Motion to Dismiss and GRANT the Motion to Strike.

**I. Background**

This is a racial discrimination case that Plaintiff Chris Lofton brings against his former employer, FTS International Manufacturing, LLC ("FTS"), for hostile work environment, retaliation, and termination. In short, Mr. Lofton, an African American, alleges that he was repeatedly the victim of racially charged remarks and deprived of opportunities for advancement despite his numerous complaints to management.

The racially charged remarks and discriminatory actions allegedly commenced shortly after FTS hired Mr. Lofton for the daytime shift in October 2011. One of Mr. Lofton's coworkers, Victor Martinez began directing racial jokes and offensive language

1

towards Mr. Lofton. This initial span of allegedly discriminatory treatment could not have lasted long; FTC terminated Mr. Lofton sometime in his first month. That decision, however, was allegedly reversed after Mr. Lofton complained to his district manager about Martinez's racial discrimination. When FTC restored Mr. Lofton's employment, it transferred him to the nightshift, away from Mr. Martinez.

Fast forward to January 2014. One of Mr. Lofton's white coworkers, Nathan Shively, ascends to supervisor and transfers Martinez to the nightshift. But according to Mr. Lofton, Martinez's transfer, and its accompanying deluge of derogatory remarks, not only affected Mr. Lofton. Other employees, apparently following Martinez's lead, began using racial slurs towards Mr. Lofton. Mr. Lofton allegedly enjoyed a brief respite from his coworkers' behavior when he began working in the oil field in late 2014. Yet by February 2015 Mr. Lofton was back working the nightshift as a "mechanic" with Martinez. The racial slurs apparently continued in February and March 2015 despite Mr. Lofton's repeated complaints to his new supervisor, Rudy Garcia, and Garcia's assurance that he would address the problem. Mr. Lofton alleges Garcia never did so, even after Garcia allegedly witnessed another employee use a racial slur towards him.

Mr. Lofton then requested a transfer back to the oil field. Management denied his request even though allegedly less qualified white employees were working in the field. This was apparently somewhat emblematic of Mr. Lofton's time at FTS; he argues that the company never offered him the same training opportunities it offered to its white employees.

Finally, on April 7, 2015, FTS terminated Mr. Lofton after one of his Hispanic coworkers allegedly reported him for sleeping on the job. To no avail, Mr. Lofton explained to FTS management that he had been sleeping in the locker room on the instructions of Garcia, who had apparently told him to nap at work rather than go home sick.

Mr. Lofton filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 29, 2015. After the EEOC issued Mr. Lofton a right to sue letter on December 5, 2016, he brought claims for hostile work environment, retaliation, and termination under the Oklahoma Antidiscrimination Act (OADA), Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981. FTS has moved to dismiss Mr. Lofton's OADA and Title VII claims. The Court addresses these claims before deciding whether to grant Mr. Lofton's Motion to Strike.

## II. Motion to Dismiss

FTS presses three reasons why Mr. Lofton's OADA and Title VII claims must be dismissed: Mr. Lofton failed to (1) exhaust administrative remedies, (2) comply with the statute of limitations, and (3) plead his allegations with the requisite plausibility.

### A. Standard of Review

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). There must be "sufficient factual matter, [which if]

3

accepted as true . . . state[s] a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A plausible claim is one that "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. If the allegations "do not support a legal claim for relief," then "as a matter of law" they must be dismissed. *Baker v. Publishers Clearing House*, 413 F. App'x 85, 87 (10th Cir. 2011).

The above standard assumes that the Court should analyze Mr. Lofton's Complaint under Rule 12(b)(6) for failure to state a claim, as FTC asks. At least as it relates to whether Mr. Lofton pled instances of discrimination with specificity, the Court will analyze that issue under 12(b)(6). But as for the matter of whether Mr. Lofton exhausted his administrative remedies by timely filing a charge of discrimination with the EEOC, it is not perfectly clear that the Court should treat FTC's Motion as one under Rule 12(b)(6).

This confusion stems from ongoing debate in this Circuit about whether exhausting administrative remedies with the EEOC is a jurisdictional requirement analyzed under 12(b)(1) or merely a condition precedent for filing suit decided under Rule 12(b)(6). *See Jones v. Standard Consulting, Standard Testing & Eng'g Co.*, No. CIV-16-1020-R, 2017 WL 1148685, at *1 (W.D. Okla. Mar. 24, 2017) (Russell, J.) ("The Tenth Circuit's position on whether exhaustion is jurisdictional or merely a condition precedent has been in a state of evolution in recent years."); *Jones v. Needham*, 856 F.3d 1284, 1289 (10th Cir. 2017) (noting the confusion but clarifying that the Tenth Circuit's "recent cases suggest that exhaustion in this context might be better characterized as a claims-processing obligation"). One district court has distinguished challenges asserting a claimant failed to

4

exhaust his administrative remedies by *timely* filing an EEOC charge from challenges arguing a claimant did not file a charge at all. *See Tolbert v. Ean Servs.*, LLC, 2016 WL 796096, at *3 (N.D. Okla. Feb. 26, 2016) ("Under Title VII, the filing of an EEOC charge is a jurisdictional requirement, analyzed under Rule 12(b)(1), whereas the timely filing of EEOC charge is a condition precedent to suit, analyzed under Rule 12(b)(6).").

In any event, the distinction does not drive the Court's decision in this case. "Whether the exhaustion requirement is characterized as jurisdictional is important only when the defendant has waived or forfeited the issue." *Hung Thai Pham v. James*, 630 F. App'x 735, 738 (10th Cir. 2015).[1] Because FTS plainly raises the issue in its Answer, it has not waived the defense.

### B. OADA Claims

Mr. Lofton brings his state law claims under the OADA, Okla. Stat. tit. 25, § 1302(A). That provision grants a right of action to individuals discriminated against by their employers for "discharg[ing] or otherwise . . . discriminat[ing] against an individual with respect to [their employment] because of," race, among other things. Unfortunately for Mr. Lofton, the OADA, specifically § 1502, requires claimants, in order for their petitions to be timely, to "file a complaint with the Oklahoma Human Rights Commission (OHRC) within 180 days after the alleged discriminatory practice occurs." *Forcum v. Via Christi Health Sys., Inc.*, 137 P.3d 1250, 1253 (Okla. Civ. App. 2006). This he did not do.

---

[1] The jurisdictional/condition-precedent distinction matters because, assuming a defendant has waived the issue, it imposes different obligations on a court. If the issue is jurisdictional and there has been a failure to exhaust, the Court has no choice but to dismiss the suit. If not jurisdictional, "the court must dismiss only if the issue has been properly presented for decision." *Hung Thai Pham*, 630 F. App'x at 738.

5

FTC's last discriminatory action—terminating him—took place on April 7, 2015. The OADA gave him 180 days, until October 4, 2015, to file a charge of discrimination based on his termination. Because he filed nearly four weeks after that, his OADA claims are barred for failure to exhaust administrative remedies.

**C. Title VII Claims**

Like the OADA, Title VII prohibits racial discrimination in the workplace, *see* 42 U.S.C. § 2000e–2(a)(1),[2] and like the OADA, it too imposes exhaustion requirements on claimants:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . such charge shall be filed . . . within three hundred days after the alleged unlawful employment practice occurred[.]"
>
> 42 U.S.C. § 2000e-5(e)(1).

FTC argues that because Mr. Lofton includes allegations in his Complaint that occurred more than 300 days before he filed a charge with the EEOC, those allegations are time-barred.[3]

---

[2] Under Title VII it is unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

[3] And to be sure, Mr. Lofton did have 300 days to file his charge with the EEOC. Granted, the strict language of § 2000e-5(e)(1) does suggest that a claimant only receives 300 days to file with the EEOC *if he or she first files a charge with a state agency*. Yet this Court has, in accordance with other federal district courts, found that charges filed with the EEOC within 300 days of an allegedly discriminatory act are timely regardless of whether a claimant has initiated proceedings with a state agency. *See, e.g., Jones v. Standard Consulting*, 2017 WL 1148685, at *4 (rejecting the argument that charges of discrimination are untimely when they are filed "with the EEOC more than 180, but less than 300 days after [a] termination."); *also see Smith v. Oral Roberts Evangelistic Ass'n, Inc.*, 731 F.2d 684, 690 (10th Cir. 1984) (holding that where

To be fair, a large portion of Mr. Lofton's Complaint concerns events that took place before January 2, 2015—300 days before he filed his EEOC charge—such as the racial slurs which began in October 2011 and FTC management's reluctance throughout 2014 to address Mr. Lofton's claims of workplace harassment. That said, the crux of Mr. Lofton's allegations occurred after January 2, 2015. He claims that FTC repeatedly ignored his complaints about racial discrimination in February and March 2015; that his supervisor took no action against a coworker who used a racial slur in March 2015, despite witnessing the event; and that FTC fired Mr. Lofton for napping on the job even though one of its supervisors had instructed him to do just that rather than use sick leave.

The issue, though, is whether Mr. Lofton should still be able to allege discriminatory acts that took place more than 300 days before he filed his EEOC charge. In a word, yes. Pretext matters. "Even when an incident of alleged employer discrimination or retaliation does not support an independent retaliation claim, it may be relevant as background evidence in a pretext inquiry." *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 543–544 (10th Cir. 2014). And while the Court recognizes that events that took place more than 300 days before Mr. Lofton filed his EEOC charge cannot form the sole basis of his retaliation claim, the Court reminds FTC that the claim for hostile work environment is a different matter. Because "the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge

---

plaintiff originally filed charge of discrimination with EEOC 237 days after her termination, plaintiff's Title VII charge was still timely because it was within 300-day filing window).

within 180 or 300 days of any act that is part of the hostile work environment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118, 122 S. Ct. 2061, 2075, 153 L. Ed. 2d 106 (2002). So if Mr. Lofton is alleging that the events from June 2014 (when Martinez again began using racial slurs) to his termination in April 2015 all comprise a hostile work environment claim, he needed to file his EEOC charge by February 1, 2016. Because he filed on October 29, 2015, his charge was clearly timely.

FTC's third argument is that because Mr. Lofton does not allege precise dates (*e.g.*, by alleging March 2015 rather than March 29, 2015) his claims are too vague to survive a motion to dismiss under Rule 12(b)(6). It does not persuade.

"[N]umerous courts in this Circuit have held that a Title VII complaint should not be dismissed for failure to plead the dates of the alleged discrimination." *Langford v. Int'l Union of Operating Engineers, Local 30*, 765 F. Supp. 2d 486, 498 (S.D.N.Y. 2011). A plaintiff is of course required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Pruitt v. Pers. Staffing Grp., LLC*, 2016 WL 6995566, at *2 (N.D. Ill. Nov. 30, 2016) (*citing E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). That said, a plaintiff need not "recall with exact precision the dates on which each event occurred." *Cowan v. City of Mount Vernon,* 2017 WL 1169667, at *12 (S.D.N.Y. Mar. 28, 2017).

Mr. Lofton alleges that FTC's reason for firing him on April 7, 2015, is pretextual. He allegedly lodged several objections to Garcia, his supervisor, in the two months leading up to his firing, and Garcia even failed on one occasion, three weeks before Mr. Lofton's termination, to take action after he witnessed racial discrimination. The Court finds that

these allegations, when paired with the background allegations of repeated racial slurs throughout 2014, push Mr. Lofton's allegations across the line from conceivable to plausible. The Court thus declines to dismiss them for failure to state a claim under Rule 12(b)(6).

Finally, nestled into its third argument, is FTC's suggestion, for which it cites no authority, that the Court should dismiss Mr. Lofton's Complaint because he failed to attach a copy of the Charge of Discrimination he filed with the EEOC. "When ruling on a Rule 12(b)(6) motion, the district court must examine only the plaintiff's complaint. The district court must determine if the complaint alone is sufficient to state a claim; the district court cannot review matters outside of the complaint." *Jackson v. Integra Inc*., 952 F.2d 1260, 1261 (10th Cir. 1991).

Mr. Lofton alleges that he exhausted his administrative remedies by timely filing a charge of discrimination with the EEOC on October 29, 2015, which issued a right to sue letter on December 5, 2016. If Defendants are in fact challenging the validity of this allegation, they may raise that argument through a motion for summary judgment. But the Court will not convert FTC's Motion to Dismiss into one for summary judgment without prior notice to Mr. Lofton.

**III. Motion to Strike**

Having ruled on FTC's Motion to Dismiss, the Court turns to Mr. Lofton's Motion to Strike FTC's second, eighth, and tenth affirmative defenses.

**A. Standard of Review**

Rule 8(c) requires defendants to set forth specified affirmative defenses in an answer along with any other matters constituting "an avoidance or affirmative defense." Fed.R.Civ.P. 8(c). Failure to raise an affirmative defense in its pleading generally results in waiver of the defense. *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1076 (10th Cir. 2009). If the defense is legally insufficient, however, Rule 12(f) permits the Court to strike it. "The purpose of Rule 12(f) is to save the time and money that would be spent litigating issues that will not affect the outcome of the case." *Purzel Video GmbH v. Smoak*, 11 F. Supp. 3d 1020, 1029 (D. Colo. 2014). "Striking a portion of a pleading is a drastic remedy; the federal courts generally view motions to strike with disfavor and infrequently grant such requests." *Id*. That said, striking an affirmative defense "rests within the discretion of the trial court." *Id*. at 1029–30.

### B. FTC's Second Affirmative Defense

FTC's second affirmative defense is short: "Plaintiff's claims are barred in whole or in part by the statute of limitations." Doc. 21, at 4. Mr. Lofton insists that the defense fails to plead sufficient factual matter to survive a motion to strike.

Much of the parties' briefing concerns whether the Court should apply the same pleading standard to affirmative defenses as it does to substantive claims. This Court has previously decided it will do so. *See, e.g., Gibson v. OfficeMax, Inc*., Case No. CIV-08-

1289-R, at 2 (W.D. Okla. Jan. 30, 2009).[4] Consequently, the Court will strike FTC's statute-of-limitations defense as conclusory.[5]

### C. FTC's Eighth Affirmative Defense

FTC's eighth affirmative defense is in fact a package of several:

> Because FTSI cannot decipher from Plaintiff's Complaint whether he claims that all of his allegations of discrimination and retaliation were intentional, FTSI asserts a contributory negligence claim. Furthermore, FTSI denies any intentional discrimination or retaliation. Nevertheless, any improper, illegal, or discriminatory actions by any employee of FTSI was an independent, intervening, and unforeseeable act that was not ratified, confirmed, or approved by FTSI and thus cannot be attributed or imputed to FTSI.

Doc. 21, at 6–7.

The Court agrees with Plaintiff that this affirmative defense essentially asserts three defenses: contributory negligence, a general denial, and an allegation of supervening causes. All will be stricken.

First, Mr. Lofton correctly points out that the defense of contributory negligence does not apply to intentional acts of discrimination. *See, e.g., Jackson v. Fronk Oil Co.*, CIV-11-1264-W, at p. 7-8 (Feb. 24, 2012 W.D. Okla) ("Contributory negligence is no defense to claims based on intentional conduct. Thus, when viewed in light of the claims asserted by [plaintiff] in his complaint, there are no circumstances under which this

---

[4] "Affirmative defenses other than the failure to mitigate damages are subject to the pleading requirements of Rule 8, F.R.Civ.P. and *Bell Atlantic Corp v. Twombly*. . . Thus, unless the factual basis for an affirmative defense is clear from the face of the complaint . . . a defendant must allege a sufficient factual basis or bases for his or its affirmative defense to show that the defense is plausibly viable on its face or sufficient factual matter from which a court can infer potential viability." *Id.*

[5] This statute-of-limitations defense is not to be confused with FTS's fifth affirmative defense—failure to exhaust administrative remedies—which the Court discussed above and which Mr. Lofton has not moved to strike.

affirmative defense could succeed and such defense should be and is hereby stricken."). In response, FTS argues that contributory negligence is still an applicable defense because Lofton bases his claim on negligent or unintentional conduct.

One might read the Complaint that way, given Mr. Lofton's allegations that his supervisors repeatedly failed to address his claims. And to be sure, negligence under Title VII is one theory of recovery. "An employer can be liable for Title VII [race-based] harassment engaged in by its supervisor if its negligence caused the harassment. Employer negligence is failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." *Hirschfeld v. New Mexico Corrections*, Dep't, 916 F.2d 572, 577 (10th Cir.1990). But nowhere does FTC explain *how* Mr. Lofton's own negligence contributed to his injuries. That defense is therefore conclusory and is thus stricken.

Nor is FTC's general denial of liability or its allegation of supervening causes any more suitable for affirmative defenses. "Affirmative defenses plead matters extraneous to the plaintiff's prima facie case, which deny plaintiff's right to recover, even if the allegations of the complaint are true. In contrast, denials of the allegations in the Complaint or allegations that the Plaintiff cannot prove the elements of his claims are not affirmative defenses." *J & J Sports Prods., Inc. v. Mendoza-Govan*, 2011 WL 1544886, at *3 (N.D. Cal. Apr. 25, 2011).

FTC's denial of "any intentional discrimination or retaliation" is no more than a denial of liability. "Where a so-called 'affirmative defense' does nothing more than rebut a plaintiff's claims directly, the defense should be stricken." *Purzel*, 11 F. Supp. 3d at 1031.

The same goes for FTC's defense that its employees' acts were independent, intervening, and unforeseeable acts. "[FTC is] free to assert at trial that their actions were not the proximate cause of [Mr. Lofton's damages]. But an assertion of this type is not an affirmative defense; it is an assertion that [Mr. Lofton] cannot prove a necessary element of its claim." *Resolution Tr. Corp. v. KPMG Peat Marwick*, 845 F. Supp. 621, 625 (N.D. Ill. 1994). The Court thus strikes the entirety of FTC's eighth affirmative defense.

### D. FTC's Tenth Affirmative Defense

Lastly, the Court considers FTC's tenth affirmative defense:

> Plaintiff did not engage in protected conduct, Plaintiff's alleged protected activity was not a motivating factor in any employment decisions pertaining to him, and FTSI would have taken the same actions, if any, in the absence of any alleged impermissible factor.
>
> Doc. 21, at 7.

FTS argues that Mr. Lofton has not properly moved to strike this defense because, though he moved to strike it in the opening portion of his Brief, he failed to explain why until his Reply brief. And indeed, the Court is sympathetic to FTS's point. "[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief." *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009). Rule 12(f), however, still permits the Court to strike redundant or immaterial matters from a pleading, a prerogative the Court chooses to exercise here because, once again, FTC is merely masking general denials of liability as affirmative defenses. The Court understands that FTC is wary of waiving its affirmative defenses by not raising them in their Answer. *See, e.g., Creative Consumer Concepts*, 563 F.3d at 1076 (10th Cir. 2009). But by not asserting every possible defense it may raise at trial, FTC is not waiving its ability to

13

challenge Mr. Lofton's evidence of discrimination at trial. Because FTC's tenth affirmative defense is not an affirmative defense at all, the Court will strike it.

IV. Conclusion

To sum, the Court will GRANT IN PART and DENY IN PART FTC's Motion to Dismiss, Doc. 20, and will dismiss Mr. Lofton's OADA claims for failure to exhaust administrative remedies. The Court also GRANTS Mr. Lofton's Motion to Strike. FTC's second, eighth, and affirmative defenses are therefore stricken. Further, seeing no way in which FTC can amend these affirmative defenses to make them legally sufficient, it will deny FTC leave to amend.

IT IS SO ORDERED this 30th day of August 2017.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE